NATIONWIDE MUTUAL INSURANCE COMPANY v. CHARLES LEROY
   HAYES, SHAFER EWELL GWYN, SHAFER EWELL GWYN, ADMINIS-
   TRATOR OF THE ESTATE OF BERNICE O. GWYN, GLENICE KEY LYNCH,
   DONALD JOE LYNCH, DONNA CHERYLEEN LYNCH, AND GREAT
   AMERICAN INSURANCE COMPANY

No. 7017SC93

(Filed 25 February 1970)

**1. Insurance §§ 79, 85; Automobiles § 5— automobile insurance —
   non-owner's liability coverage — transfer of title**

   An insured under a non-owner's liability policy whose recently pur-
   chased automobile was involved in an accident on 27 January 1968 was
   covered under a provision of the non-owner's policy which stated that if
   the insured acquired ownership of an automobile during the policy period
   the policy shall apply with respect to the ownership or use of the auto-
   mobile "for a period of 30 days next following the date of such acqui-
   sition," where the evidence was to the effect that the seller of the auto-
   mobile delivered it to the insured on 27 December 1967 and received a
   check in full payment but that the seller did not execute and transfer
   to insured the title certificate to the automobile until 28 December 1967,
   the title to the automobile having passed to the insured, within the
   meaning of G.S. 20-72(b), only on 28 December 1967.

**2. Automobiles § 5— transfer of automobile title — prerequisites**

   No title passes to the purchaser of a motor vehicle until the certificate
   of title has been assigned by the vendor, and delivered to the vendee or
   his agent, and the motor vehicle delivered to the transferee. G.S. 20-72(b).

APPEAL by defendant Great American Insurance Company from
*Johnston, J.,* 1 September 1969 Session of SURRY Superior Court.

Nationwide Mutual Insurance Company (Nationwide) brings
this action for a declaratory judgment that no coverage was afforded
by it to Charles Leroy Hayes (Hayes) for claims against Hayes
because of an accident involving Hayes' automobile.

The plaintiff, Nationwide, issued under the Assigned Risk Plan
a non-owner's liability insurance policy, No. 61-686-428, to Hayes,
effective 12:01 a.m., 14 December 1967 and running until 14 Decem-
ber 1968. The policy provided that it did not apply "(a) to any
automobile or land motor vehicle owned by the Policyholder (Named
Insured) or a member of the same household. . . ." The non-
owner's endorsement of the policy provides that "3. If the Policy-
holder (Named Insured) acquires ownership of an automobile or
land motor vehicle during the policy period, the insurance hereunder
shall nevertheless apply with respect to the ownership, maintenance
or use of such automobile or land motor vehicle for a period of 30
days next following the date of such acquisition; . . ."

Hayes, with the assistance of his employer, Harold Y. Hodges (Hodges), sought to acquire a 1959 Pontiac automobile from Bertie S. George. According to the testimony, preliminary negotiations resulted in the delivery of the car to Hodges' warehouse on December 26 or 27, 1967. A check in the amount of $450.00 was delivered to the seller in full payment for the automobile on December 27, 1967. The title certificate was signed and executed on December 28, 1967, by the seller, Bertie George.

Hodges testified that he called the Surry Insurance Agency on December 27th and 28th with respect to getting insurance coverage on the Pontiac for Hayes. He testified that he notified whoever answered the telephone that Hayes had acquired ownership of an automobile and that Nationwide should be notified that his non-owner policy should be changed to an owner's policy. Subsequently, forms necessary for Hayes to acquire license plates were forwarded to Hayes by the Surry Agency.

Hayes was involved in a collision at 11:52 a.m. on 27 January 1968 with a car driven by Shafer Ewell Gwyn. Great American Insurance Company (Great American) insured Gwyn's car, such coverage including uninsured motorists protection. Claims for personal injury and property damage have arisen against Hayes because of the accident.

Written notice was sent to Nationwide on 30 January 1968 requesting a change to an owner's policy, telling of the accident, and asking that coverage be made retroactive to 27 December 1967. Nationwide refused to make the new policy retroactive and would defend Hayes only with a reservation of rights under the old policy.

Upon the trial of the matter the trial judge entered the following order, in part:

> "THIS CAUSE coming on to be heard and being heard before the undersigned Judge Presiding at the September 2, 1969 Session of Superior Court of Surry County; and all parties in open court having stipulated and agreed to waiver of trial by jury, and having consented to the case being heard and determined by the Court sitting without a jury; and the Court having heard and considered the evidence presented by the parties;

> "The Court makes the following FINDINGS OF FACT:
> * * *
> "XXII.  On December 26, 1967, Charles Leroy Hayes reached an agreement to purchase said automobile from Bertie S. George for the sum of $450.00. Hayes' employer, Harold Y. Hodges

agreed to advance said money to Hayes for purchase of said automobile, and to deduct repayment of said amount from the salary of Charles Leroy Hayes at a stipulated sum per month.

"XXIII. Enos James George agreed with Charles Leroy Hayes to deliver said automobile at the place of his employment, the warehouse owned by Harold Y. Hodges.

"XXIV. On December 26, or December 27, 1967, Enos James George delivered said automobile to the warehouse of Harold Y. Hodges pursuant to his agreement with Hayes. George parked the automobile in the warehouse, removed the license tags, and left the keys in the automobile.

"XXV. On December 27, 1967, a check in the amount of $450.00 drawn on the account of the Smith-Douglas Agency, and signed by Dot Hodges, wife of Harold Y. Hodges, was delivered by Mrs. Hodges to Bertie S. George in payment for said automobile. Said check appears in evidence as plaintiff's Exhibit No. 7.

"XXVI. On December 28, 1967, the certificate of title on the aforesaid automobile was brought to the Hodges' warehouse by Bertie S. George, and assignment of title in Block A thereon was signed by her on said date. On the same date, Block D, purchaser's application for new certificate of title, was signed by Charles Leroy Hayes. On the same date, Harold Y. Hodges was listed as lien holder on said title certificate.

\* \* \*

."XXVIII. From the date of its delivery, said automobile remained parked at the Hodges' warehouse until after Hayes had obtained license tags for said automobile. Hayes first was aware that the automobile had been delivered to the Hodges' warehouse either on the night of December 26, 1967, or the morning of December 27, 1967.

"XXIX. As of December 27, 1967, there was nothing left to be done to consummate the purchase and sale of said automobile except formal transfer of the title certificate.

"XXX. The Court finds as a fact that Charles Leroy Hayes 'acquired ownership' of said 1959 Pontiac automobile on December 27, 1967.

\* \* \*

"XXXII. The accident which occurred at 11:52 a.m. on January 27, 1968, while said 1959 Pontiac automobile was be-

ing operated by Charles Leroy Hayes occurred more than 30 days after Charles Leroy Hayes acquired ownership of said automobile.

\* \* \*

"Upon the foregoing findings of fact, the Court reached the following CONCLUSIONS OF LAW:

\* \* \*

"II.   Charles Leroy Hayes acquired ownership of the 1959 Pontiac automobile involved in the accident more than 30 days prior to occurrence of the accident.

"III.   No coverage is afforded to Charles Leroy Hayes by Nationwide as to claims arising out of the accident of January 27, 1968; and Nationwide has no obligation to defend Charles Leroy Hayes in said actions.

"IV.   Charles Leroy Hayes was uninsured at the time of said accident, and therefore the uninsured motorist coverage of the Great American Insurance Company policy is applicable to claims arising out of said accident by Shafer Ewell Gwyn and passengers in the Gwyn automobile.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Nationwide Mutual Insurance Company affords no coverage to and has no obligation to defend claims arising out of an automobile accident which occurred on January 27, 1968 between a 1959 Pontiac automobile owned by Charles Leroy Hayes and a 1965 Pontiac automobile owned by Shafer Ewell Gwyn; that the uninsured motorist coverage afforded under a policy of insurance issued by Great American Insurance Company to Shafer Ewell Gwyn is applicable to claims of Shafer Ewell Gwyn and his passengers arising out of said accident; that Nationwide Mutual Insurance Company is hereby authorized to withdraw defenses previously afforded to Charles Leroy Hayes under a reservation of rights in civil actions arising out of said accident which are presently pending in the Superior Court of Surry County, North Carolina; and that the costs of this declaratory judgment action be taxed against the defendant Great American Insurance Company.

"This the 9th day of September, 1969.

"s/ Walter E. Johnston
JUDGE PRESIDING"

The question on this appeal is whether the non-owner liability insurance afforded by Nationwide on Hayes' Pontiac or the unin-

sured motorists protection on Gwyn's automobile covers (to the extent of the respective policy limits) the liabilities which may result from adjudication of claims against Hayes.

*Womble, Carlyle, Sandridge & Rice by Jimmy H. Barnhill and Allan R. Gitter for defendant appellant.*

*Hudson, Petree, Stockton, Stockton and Robinson by J. Robert Elster and John M. Harrington for plaintiff appellee.*

*Folger & Folger by Fred Folger, Jr., for defendant appellees, Shafer Ewell Gwyn, Shafer Ewell Gwyn, Administrator of the Estate of Bernice O. Gwyn, Glenice Key Lynch, Donald Joe Lynch and Donna Cheryleen Lynch.*

CAMPBELL, J.

[1] This appeal boils down to the question whether title passed to Hayes' newly-acquired automobile on 27 December or 28 December 1967. If the former is true, the collision involving Hayes' car occurred more than 30 days from the date title to the automobile passed to Hayes, and the protection provided by the Nationwide Non-Owner's Endorsement, paragraph 3, does not apply. If the latter is the case, then the Nationwide policy would cover Hayes' car at the time of the accident, in that it was acquired during the policy period and the accident occurred within 30 days of the time title passed to the owner, Hayes.

The recent case of *Insurance Company v. Insurance Company,* 276 N.C. 243, 172 S.E. 2d 55 (1970), treated the question of when title to an automobile passes. Construing G.S. 20-72(b) as applicable to that case, the Court held that title to a vehicle passed when, as the statute provided, "the provisions of this section have been complied with." The wording of the statute then was:

"Sec. 20-72. *Transfer by owner.* — * * *

"(b) The owner of any vehicle registered under the foregoing provisions of this article, transferring or assigning his title or interest thereto, shall also endorse an assignment and warranty of title, including in such endorsement the name and address of the transferee and the date of transfer, in form approved by the Department upon the reverse side of the certificate of title or execute an assignment and warranty of title of such vehicle and a statement of all liens or encumbrances thereon, which statement shall be verified under oath by the owner, who shall

deliver the certificate of title to the purchaser or transferee at the time of delivering the vehicle, except that where deed of trust, mortgage, conditional sale or title retaining contract is obtained from purchaser or transferee in payment of purchase price or otherwise, the lien holder shall forward such certificate of title papers to the Department within twenty days together with necessary fees, or deliver such papers to the purchaser at the time of delivering the vehicle, as he may elect, but in either event the penalty provided in § 20-74 shall apply if application for transfer is not made within twenty days. Any owner selling or transferring his interest to a motor vehicle who willfully fails or refuses to endorse an assignment of title and any person who delivers or accepts a certificate of title endorsed in blank shall be guilty of a misdemeanor. Transfer of ownership in a vehicle by an owner is not effective until the provisions of this section have been complied with."

It is to be noted that subsequent to the time covered in the above case, the section of the statute was rewritten effective 1 July 1963, and it now reads:

"(b)   In order to assign or transfer title or interest in any motor vehicle registered under the provisions of this article, the owner shall execute in the presence of a person authorized to administer oaths an assignment and warranty of title on the reverse of the certificate of title in form approved by the Department, including in such assignment the name and address of the transferee; and no title to any . . . motor vehicle shall pass or vest until such assignment is executed and the motor vehicle delivered to the transferee. The provisions of this section shall not apply to any foreclosure or repossession under a chattel mortgage or conditional sales contract or any judicial sale.

Any person transferring title or interest in a motor vehicle shall deliver the certificate of title duly assigned in accordance with the foregoing provision to the transferee at the time of delivering the vehicle, except that where a security interest is obtained in the motor vehicle from the transferee in payment of the purchase price or otherwise, the transferor shall deliver the certificate of title to the lienholder and the lienholder shall forward the certificate of title together with the transferee's application for new title and necessary fees to the Department within twenty (20) days. Any person who delivers or accepts a certificate of title assigned in blank shall be guilty of a misdemeanor."

[2] While the "provisions" which must be complied with have changed and it is no longer necessary that application be made for a new certificate of title before title passes, the fact remains that the statute still sets up standards which must be met before passage of title to a new owner. *Insurance Co. v. Insurance Co., supra.* The statute now prescribes that no title passes to the purchaser of a motor vehicle until (1) the certificate of title has been assigned by the vendor, and (2) delivered to the vendee or his agent, and (3) the motor vehicle delivered to the "transferee." In this case, these conditions were not fulfilled until December 28, 1967.

[1] We hold then that the accident happened at a time when the Non-Owner's Endorsement in the Nationwide policy provided coverage for the Hayes vehicle. Since the trial judge in this case found otherwise, this cause must be reversed and remanded.

Reversed.

PARKER and HEDRICK, JJ., concur.